**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Civil No. 1:21cv141-HSO
                                              Criminal No. 1:18cr30-HSO-RHW-1**

**ERIK IVAN BETANCOURT OLGUIN**

**<u>MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ERIK
IVAN BETANCOURT OLGUIN'S MOTION [186] UNDER 28 U.S.C. § 2255 TO
VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY, AND DENYING DEFENDANT'S MOTION [188] TO
EXPAND THE RECORD</u>**

BEFORE THE COURT are Defendant Erik Ivan Betancourt Olguin's Motion

[186] under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person

in Federal Custody, and his Motion [188] to Expand the Record. Defendant argues

that his conviction should be overturned because his guilty plea resulted from

ineffective assistance of counsel, specifically his attorney's alleged gross

misrepresentations of his likely sentencing consequences. Mot. [186] at 2. After due

consideration of the parties' filings and relevant legal authority, the Court finds

that Defendant's Motions [186][188] should be denied.

I. <u>BACKGROUND</u>

A.    <u>Procedural history</u>

On February 21, 2018, Erik Ivan Betancourt Olguin ("Defendant" or

"Betancourt") was charged by the Grand Jury in a six-count Indictment [37]. Indict.

[37]. Betancourt ultimately pled guilty pursuant to a written Plea Agreement [97] with the Government to Count 1 of the Indictment [37], which charged him with knowingly and intentionally conspiring with others to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Indict. [37] at 1; Minute Entry, Sept. 7, 2018. Pursuant to 21 U.S.C. § 841(b)(1)(A), this count of conviction carried a statutory minimum term of imprisonment of ten years, up to a maximum of life. 21 U.S.C. § 841(b)(1)(A).

This guilty plea occurred at Betancourt's second change of plea hearing. At his initial plea hearing scheduled for August 17, 2018, he requested and was given an additional extension of the plea deadline to decide whether he wished to plead or instead proceed to trial. *See* Text Only Order, Aug. 17, 2018; Digital Audio File [91]. The Court granted Betancourt's request and extended the deadline for any plea agreement until August 31, 2018. Text Only Order, Aug. 17, 2018. Betancourt then filed another Notice [95] of Intent to Change Plea, and actually pled guilty on September 7, 2018. Minute Entry, Sept. 7, 2018.

Betancourt's Plea Agreement [97] with the Government contained several written waivers, including that he, while retaining the right to pursue a claim of ineffective assistance of counsel,

> expressly waives the following rights:
> a. the right to appeal the conviction and sentence imposed in this case, or the manner in which that sentence was imposed, on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever, and

b. the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, on any ground whatsoever, including but not limited to a motion brought under Title 28, United States Code, Section 2255 . . . .

Plea Agree. [97] at 4-6.

At some point between his guilty plea and the sentencing hearing scheduled for December 7, 2018, Betancourt sent a letter to the Court, in which he claimed that his defense counsel at his plea hearing, Arthur Carlisle ("Carlisle"), had induced him to plead guilty by claiming that he would receive less than ten years' imprisonment, but after pleading guilty, Carlisle instead told him he would be sentenced to life imprisonment. Tr. [164] at 18-19. As a result of this alleged bad advice, he refused to communicate with Carlisle and sought a new attorney. Mot. [122]. Carlisle filed a Motion [122] to Withdraw, which the Court granted, Text Only Order, Dec. 11, 2018, and James Halliday ("Halliday") was appointed to represent Betancourt at his sentencing hearing, Order [123].

Prior to sentencing, Betancourt through his new counsel filed a Motion [145] to Withdraw his guilty plea, asserting that "because of the ineffective assistance of [Carlisle], [he] was unable to knowingly or voluntarily enter into a plea agreement." Mem. [146] at 1. Betancourt argued that he had insisted to Carlisle that he wanted to go to trial, *id.* at 7, but "reluctantly" pled guilty after Carlisle had advised him that his advisory term of imprisonment under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") would be 78 to 108 months, *id.* at 5, 7. However, the Presentence Investigation Report ("PSR") prepared by the probation office instead determined that the Guidelines imprisonment range was life, based

3

on a total offense level of 43[1] and his criminal history category of I. PSR [154] at 19. Betancourt contended that due to the offense characteristics, specifically the quantity and purity of the methamphetamine involved and his possession of firearms, any competent defense attorney would have recognized the likelihood of an offense level of 40 or greater, and would not have advised Betancourt to plead guilty pursuant to a waiver of appellate and post-conviction rights when he "faces a Guidelines sentence of life without parole whether he is convicted by plea agreement or guilty verdict at trial." Mem. [146] at 6.

The Government contested Betancourt's Motion [145], arguing that at the plea hearing, he had testified under oath that he had no complaints with his representation, that he understood that his sentence could be different from any estimate given by Carlisle, and that he understood he could be sentenced to life imprisonment based on the statutory maximum. Resp. [147] at 5.

On February 28, 2019, the Court held a hearing on Betancourt's Motion [145], followed by his sentencing after it denied the Motion [145]. Minute Entries, Feb. 28, 2019. Betancourt did not testify regarding the Motion [145], but Halliday represented that any testimony would have been consistent with the arguments in the Motion [145]. Tr. [164] at 4. In an extensive ruling on the record, the Court analyzed the seven factors listed in *United States v. Carr*, 740 F.3d 339, 343-44 (5th

---

[1] The PSR calculated Betancourt's base offense level as 38 under U.S.S.G. § 2D1.1(b)(1), because the offense involved 6.2528 kilograms of methamphetamine "ice." PSR [154] at 15. Betancourt received a two-point enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon, a two-point enhancement under § 2D1.1(b)(5) because the methamphetamine "ice" was found to have been imported, and a four-level enhancement under § 3B1.1(a) as an organizer or leader of the drug trafficking conspiracy. *Id.* This resulted in an offense level of 46, which was then reduced by three points to 43 for acceptance of responsibility. *Id.* at 16.

Cir. 1984), and the two-part ineffective assistance of counsel test from *Strickland v.*
*Washington*, 466 U.S. 668 (1984), to determine whether the Motion [145] should be
granted. Tr. [164] at 9-37. As relevant for the present Motion [186] to Vacate, the
Court's ruling addressed its findings as to the credibility of Betancourt's claims, Tr.
[164] at 15-16, 18-19, 21, 26, 30, 35-36, and as to any prejudice suffered by
Betancourt from any error by Carlisle, *id.* at 33-35.

Regarding Betancourt's claim that Carlisle had told him that his Guidelines
range would be 78 to 108 months' imprisonment if he pled guilty, the Court stated:

> It strains credulity for the Court to believe that Mr. Carlisle, at his
> experience level and the time he's been doing these kinds of cases, would
> ever make such a recommendation in a case like this. And I can say with
> certainty there has never been an occasion in which Mr. Carlisle has
> done something like that in all the other cases he's had before this Court.
>
> It's also, frankly, unbelievable to believe that Mr. Carlisle would
> recommend a – or would tell the defendant that he was facing a range
> of between 78 to 108 months because that range is below the mandatory
> minimum of 120 months. It is a legal impossibility that [Betancourt]
> could receive less than 120 months. The Court advised him of that at the
> sentencing hearing. He swore under oath he understood that. And to
> now come before the Court and expect the Court to believe that he was
> told he would get less than 10 years is simply totally unbelievable. And
> it is in the Court's view, consistent with the statements in the
> presentence report, that of all the defendants in this case, [Betancourt]
> was the least forthcoming and the least truthful, and, in fact, fabricated
> information when he was interviewed by agents. That is a consistent
> theme that has run throughout the presentence report and this case
> based upon other sentencings this Court has held in this case.
>
> Indeed, if the Court were to accept Mr. Betancourt's version of events,
> they conclusively establish that he lied repeatedly under oath before this
> Court when he plead [sic] guilty. So the Court simply does not believe
> what he is saying. It is not credible and not believable.

*Id.* at 15-16. The Court further rejected Betancourt's claims about wanting to go to
trial and being pressured to plead guilty as "completely at odds with the statements

Mr. Betancourt made to the Court under oath" and also "not believable," *id.* at 21, and concluded that Betancourt "ha[d] not shown that Mr. Carlisle underestimated his sentencing exposure to the extent that he claims or that he was otherwise deficient in a *Strickland* sense," *id.* at 36.

The Court also found that Betancourt had not shown any prejudice under *Strickland*:

> The statements made under oath, the signing of the plea agreement, all of that points to the fact that the defendant cannot show prejudice. Everything he complains about he was advised about by the Court before the Court accepted his plea, and he admitted under oath he [understood] all of that. For him to take the position he takes now can only lead the Court to conclude that he was lying under oath if, in fact, his story here is now true, which the Court does not believe.

> \*       \*       \*

> Here, it's been indicated that the defendant was offered the opportunity to proffer with the government and that he was caught in a number of fabrications, which certainly indicates by his own conduct he compromised his ability to maximize the benefit he might have received under his plea agreement. That does not constitute prejudice in the *Strickland* sense.

*Id.* at 34-35; *see also* Resp. [147] at 3-4 (Government's argument that Betancourt "attempted to cooperate and pled as part of a cooperation agreement" and "much of his complaint here is that he will not be receiving a sentence reduction because he was caught in numerous fabrications").

After the Court denied Betancourt's Motion [145] to Withdraw Guilty Plea, it proceeded to sentencing. During his allocution, Betancourt commented on his guilty plea and his claims regarding Carlisle's advice:

> I agree with [the Court] that the day that I said – that I changed my plea to guilty, I understood every single right that you gave me. . . .

6

> [W]hen my attorney told me to sign this paper I was at a level 36. And he had told me that if I signed, he said I will get to a level of three if accepted my culpability. From there, he assured me I can do another program called Fast Track program, and it would be one to four levels for deportation, the safety valve, and I will get to a level of 30, and I will be facing 10 years, and that's what I was looking at.

Tr. [164] at 40-41. Betancourt's attorney requested a downward variance from the Guidelines range, which the Court granted, *id.* at 48, and it sentenced Betancourt to a term of imprisonment of 330 months, to be followed by five years of supervised release, a $10,000.00 fine, and a $100.00 special assessment, J. [156].

Betancourt appealed his conviction, arguing that the Court erred in denying his motion to withdraw his guilty plea and that Carlisle was ineffective. *United States v. Olguin*, 790 F. App'x 5, 5 (5th Cir. 2020). The Fifth Circuit denied the appeal, stating that "the district court did not clearly err in crediting [Betancourt]'s sworn statements at rearraignment, which were made under oath and carry a strong presumption of verity, over his contradictory, inconsistent, and unsworn allegations set forth in his motion to withdraw his plea." *Id.* at 5-6 (quotation and citation omitted). The Court of Appeals declined to address Betancourt's ineffective assistance of counsel claim on direct appeal because "[t]he record [was] not sufficiently developed to allow . . . a fair evaluation of [his] claim of ineffective assistance of counsel." *Id.* at 6.

B.    Betancourt's present Motions [186][188]

On April 26, 2021, Betancourt filed the present Motion [186] to Vacate his conviction under 28 U.S.C. § 2255, raising only one ground: ineffective assistance of counsel based on Carlisle's alleged advice that, if Betancourt pled guilty, "he would

receive a sentence of 10 years' imprisonment." Mem. [187] at 7. Notably, this is different than the position Betancourt took in his Motion [145] to Withdraw. He now argues that this incorrect assessment of his likely Guidelines range constituted deficient performance, *id.* at 10, and that he would have gone to trial had he known the correct range, *id.* at 11. In support of this claim, Betancourt points to his actions after he learned of his Guidelines range of life imprisonment, "writing to the court, successor counsel's motion to withdraw the plea," and his testimony at the hearing. *Id.* at 12. Betancourt has also filed a Motion [188] to Expand Record to add his own Declaration [188-1], which states that "Mr. Carlisle told [him] that if [he] accepted the Government's formal plea offer [he] would receive a sentence of 10 years' imprisonment." Decl. [188-1] at 2.

The Court initially denied the Motion [186] to Vacate as untimely, and the Motion [188] to Expand Record as moot. *See* Order [191]. Betancourt successfully appealed this dismissal to the Fifth Circuit which reversed the finding as to the timeliness of the Motion [186], and remanded for further proceedings. *See United States v. Olguin*, No. 21-60484, 2022 WL 1117692, at *1 (5th Cir. Apr. 14, 2022).

Following remand, the Court entered an Order [212] instructing Carlisle to file an affidavit responding to Betancourt's claims and requiring an answer from the Government. Order [212] at 1-2. Carlisle did not file an affidavit within the time set by the Court, nor did he file one after the Court entered another Order [213] directing him to submit an affidavit. *See* Order [213]. To date, Carlisle has not responded to the Court's Orders [212][213].

In its Response [214], the Government argues that Betancourt's Motion [186] should be denied because "the Court has previously determined the basis for this motion is not credible." Resp. [214] at 4. In addition, it asserts that Betancourt has contradicted his earlier claims in his initial Motion [145] to Withdraw Guilty Plea because he now asserts that Carlisle told him he would receive ten years' imprisonment instead of the 78 to 108 month range previously claimed. *Id.*; *see also* Mem. [146] at 7; Mem. [187] at 11.

Betancourt replies that any discrepancy between his representations at the motion hearing and sentencing and his current claims must be resolved at an evidentiary hearing, Reply [217] at 9, and he asserts that the Court must accept his allegations as true because Carlisle has not provided an affidavit, *id.* at 3, 12 n.11.

## II. DISCUSSION

A.    Legal standard

After a federal prisoner's conviction is final, there are four narrow and separate grounds upon which he may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

"[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'" *United States v. Samuels*, 59 F.3d 526,

528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc)). Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32. Relief under 28 U.S.C. § 2255 is therefore reserved for violations of constitutional rights, and for a narrow range of injuries which could not have been raised on direct appeal which, if condoned, would result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

B.   Betancourt's Motion [188] to Expand Record

The Court finds that Betancourt's Motion [188] to Expand Record should be denied. The record already before the Court is sufficient to address all of his claims, and Betancourt only seeks to add his own Declaration [188-1], which merely repeats his existing arguments, and both contradicts and reiterates his previous representations to the Court at the motion hearing and sentencing. *See* Mot. [188]; Decl. [188-1]; Tr. [164] at 15; 40-41. Therefore, even if the Court considered the Affidavit [188-1], it would have no effect on the outcome.

C.   Whether Betancourt's counsel was ineffective for allegedly misadvising him of his Guidelines sentencing range

1.   Standard for ineffective assistance of counsel claims

Betancourt asserts that Carlisle advised him that "he would receive a sentence of 10 years' imprisonment if he accepted the Government's formal plea offer," which was "an obvious gross misrepresentation of the likely sentencing consequences." Mem. [187] at 7. He claims that had he been advised that he would

likely face a Guidelines range of life imprisonment, he would have proceeded to trial. *Id.* at 11.

A guilty plea is valid when "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Shepherd*, 880 F.3d 734, 740 (5th Cir. 2018) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). For "a defendant represented by counsel during the plea process who enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 741 (quoting *Hill*, 474 U.S. at 56). Whether a convicted defendant's counsel was effective is governed by the two-part test from *Strickland*. *Id.* "First, the defendant must show that counsel's performance was deficient" by demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

In the context of a guilty plea, a defendant is only prejudiced if "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Shepherd*, 880 F.3d at 743 (quoting *Hill*, 474 U.S. at 59). In this context, relevant factors to show prejudice include:

> (1) the defendant's evidence to support his assertion that he would have gone to trial had he known the relevant circumstances; (2) his likelihood of success at trial; (3) the risks he would have faced at trial; (4) his

representations about his desire to retract his plea; and (5) the district court's admonishments.

*Shepherd*, 880 F.3d at 744 (cleaned up). A court must consider this probability objectively, and a defendant cannot demonstrate prejudice based solely on his post-hoc assertions that he would have gone to trial had he been given different advice. *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016); *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

2.   <u>Whether Betancourt's counsel was deficient</u>

Citing to *United States v. Herrera*, 412 F.3d 577 (5th Cir. 2005), Betancourt argues that Carlisle was deficient due to his alleged statement that Betancourt would be sentenced to ten years if he pled guilty when his actual Guidelines range was life imprisonment. Mem. [187] at 7-10. In *Herrera*, the Fifth Circuit held that the defendant's counsel was deficient when he advised Herrera to reject a plea offer that would have subjected him to a 48 month sentence because counsel believed that Herrera "faced only a 51-month maximum guideline sentence if he was convicted at trial. In actuality, Herrera faced a sentencing range of 78 to 97 months." 412 F.3d at 579, 581. This incorrect advice did "not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial," and therefore did not satisfy the objective standard of performance required by *Strickland*. *Id.* at 580-81.

Incorrect advice about sentencing consequences can constitute deficient performance under some circumstances. *See id.*; *see also United States v. Grammas*, 376 F.3d 433, 435-37 (5th Cir. 2004) (finding deficient performance where counsel

admitted he advised his client that "he would, at most, be imprisoned for 6 to 12 months if he were to be convicted," when the actual sentencing range was 70 to 87 months); *Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017) (finding deficient performance where counsel told his client he would receive a one-year sentence when the mandatory minimum was five years); *but see United States v. Valdez*, 973 F.3d 396, 402-404 (5th Cir. 2020) (holding that a defendant's counsel was not ineffective even though counsel had advised the defendant that his Guidelines range was 24 to 33 months when his actual Guidelines range was 324 to 405 months because counsel had advised him of the statutory maximum, the estimate was not a guarantee or promise, and the miscalculation was based on counsel's lack of knowledge of the cross-reference provision of U.S.S.G. § 2K2.1(c)(1)).

Here, however, Betancourt has not established that his counsel actually misinformed him of his sentencing exposure. To the contrary, this Court has already found that his claims are not credible following an evidentiary hearing where Betancourt was represented by new counsel.[2] *See* Tr. [164] at 15-16, 18-19, 21, 26, 30, 35-36.

In making the credibility determination, the Court pointed to Betancourt's sworn testimony at the plea hearing. During that hearing, the Court discussed the statutory penalty for the Count to which he pled:

> THE COURT: If you plead guilty to this charge, the maximum and mandatory minimum penalties to which you would be exposed would be as follows: A term of imprisonment of not less than 10 years, up to a maximum of life; a fine of up to $10 million; a term of supervised release

---

[2] Betancourt does not allege any ineffective assistance of counsel on the part of Halliday, his new attorney.

of at least five years; and a $100 special assessment. Do you understand
that those are the maximum and mandatory minimum penalties to
which you would be exposed by pleading to this charge?
THE DEFENDANT: Yes, sir.
THE COURT: Have you discussed those with your attorney and asked
him any questions that you may have had about them?
THE DEFENDANT: Yes, sir.
THE COURT: Did you understand his answers?
THE DEFENDANT: Yes, sir.

Tr. [163] at 19-20. This testimony reflects Betancourt's statements under oath that

Carlisle had discussed with him that the statutory minimum sentence he faced was

ten years, with a maximum sentence of life imprisonment. *See also* Plea Agree. [97]

at 1 ("Defendant understands that the penalty for the offense charged in Count 1 of

the indictment, charging a violation of Title 21, United States Code, Section 846, is

not less than 10 years, up to life in prison . . . .").

In addition, Betancourt acknowledged that no one had made any promises or

assurances to him to induce him to plead guilty besides the statements in the Plea

Agreement [97] and Plea Supplement [98].[3] *Id.* at 14. While these documents stated

that the Government would recommend a sentence in the lower 25% of the

Guidelines range, neither the Plea Agreement [97] nor the Plea Supplement [98]

contained any statements guaranteeing or even suggesting that Betancourt might

receive a sentence between 78 to 120 months. *See* Plea Agree. [97] at 2; Plea Supp.

[98] at 1-2 (filed under seal) ("It is further understood that the Court, in accord with

---

[3] The Court notes that while Betancourt does not speak English and required assistance from a
Spanish interpreter at the hearing, neither the Plea Agreement [97] nor Plea Supplement [98] are
signed by an interpreter. At the plea hearing, Carlisle stated that he had acted as the interpreter in
discussing these documents with Betancourt because he speaks fluent Spanish. Tr. [163] at 4.
Betancourt stated under oath that Carlisle was able to fully translate these documents for him and
that he understood them. *Id.* at 11-12. And he does not allege that he experienced any language
barrier or that it played any role in the events in question here.

the principles of Rule 11, Federal Rules of Criminal Procedure, is not required to accept the recommendation of the U.S. Attorney, but may sentence Defendant to the maximum fine and imprisonment as provided by law . . . .").

Betancourt's sworn statements at the plea hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Based on this testimony, the Court found that his claims regarding Carlisle's representation were "completely at odds with the statement [he] made to the Court under oath and simply are not believable, the Court does not believe them, and rejects these arguments." Tr. [164] at 21.

In addition, the Court discussed Betancourt's history of fabrication throughout the case. *See id.* at 15-16; 35. The original Motion [145] to Withdraw Guilty Plea also followed the Government's discovery of these lies, which eliminated a possible sentence reduction for cooperation. *See* Resp. [147] at 3-4; Tr. [164] at 35. This repeated deceit and close timing with the loss of one of the key benefits of his Plea Agreement [97] further undermines Betancourt's allegations.

Moreover, the Court noted that Betancourt's claims that Carlisle had informed him he would receive a sentence between 78 to 108 months was absurd given that the statutory minimum sentence was ten years. *Id.* at 35 ("[T]he defendant has not persuaded the Court that Mr. Carlisle made such an underestimate in this case. It is incredible, unbelievable, and can only be an outright fabrication based upon the fact that was a legal impossibility."). After hearing the Court's ruling, in allocution Betancourt subsequently changed his

claims about Carlisle's estimation, and stated that Carlisle had instead told him that he would receive ten years. *See id.* at 41 ("[H]e assured me . . . I will be facing 10 years, and that's what I was looking at."); Mem. [187] at 7 ("Counsel assured Mr. Betancourt Olguin that he would receive a sentence of 10 years' imprisonment if he accepted the Government's formal plea offer."). The Court views his shifting of claims as to Carlisle's advice as further strengthening its credibility determination at the hearing that Betancourt's assertions are false.

Betancourt argues that the Court should treat his own inconsistent statements in the same manner as dueling affidavits, and says the discrepancy must be resolved at an evidentiary hearing.[4]  Reply [217] at 11-12 (citing *United States v. Jolley*, 252 F. App'x 669 (5th Cir. 2007)). However, a true dueling affidavit scenario involves sworn statements by *different* individuals that tell differing stories. *See, e.g.*, *Jolley*, 252 F. App'x at 670-71. Here, it is instead Betancourt himself who has created the discrepancy by changing his account of what Carlisle told him. *Compare* Mem. [146] at 5 ("Mr. Carlisle advised Mr. [Betancourt] that if he pleaded guilty, his Guideline range would be 78 to 108 months . . . .); *with* Mem.

---

[4] Betancourt appears to alternatively argue that his representations to the Court in his Motion [145] to Withdraw Guilty Plea and those made by his attorney at the motion hearing cannot be considered because Betancourt himself did not "testif[y] under oath" regarding the Motion [145]. *See* Reply [217] at 10. The Court notes that the statements made by his attorney on his behalf equally carry this presumption of truthfulness. *See Blackledge*, 431 U.S. at 73-74 ("For the representations of the defendant, *his lawyer*, and the prosecutor at such hearing, as well as any findings made by the judge . . . constitute a formidable barrier in any subsequent collateral proceedings."). Betancourt's attorney stated that had he testified, his statements would have been consistent with the Motion [145]. Tr. [164] at 4. To the extent Betancourt is claiming that he had previously lied to the Court in his Motion [145] about the sentencing estimate given by Carlisle and would have given different testimony at the hearing, this only further demonstrates that any statements by Betancourt regarding what Carlisle told him are unreliable.

16

[187] at 7 ("Counsel assured Mr. Betancourt Olguin that he would receive a sentence of 10 years' imprisonment if he accepted the Government's formal plea offer.").

Moreover, the Court has already held a hearing on Betancourt's claims a few months after the incorrect advice allegedly occurred, *see United States v. Peters*, Nos. 1:16cr80-LG-RHW-1 & 1:18cv93-LG, 2021 WL 371174, at *1 (S.D. Miss. Aug. 20, 2021) (finding *Jolley* inapplicable where "the issues presented in this case were discussed in open court"), and Betancourt does not explain what would be gained from having another hearing now, besides potentially him stating under oath this new claim that Carlisle told him he would receive 10 years instead of his earlier claim of 78 to 108 months from his Motion [145].

And contrary to his claims that the Court must accept his story as true, because Betancourt testified under oath at his plea hearing that he understood the statutory minimum penalty and that he was not made any promises as to what sentence he would receive, he "must [show] independent indicia of the likely merit of [his] contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden." *United States v. Raetzsch*, 781 F.2 1149, 1151 (5th Cir. 1986); *Denmark v. United States*, Nos. 6:13cv294 & 6:10cr83, 2014 WL 988613, at *6 (E.D. Tex. Mar. 7, 2014) (denying a § 2255 petition without an evidentiary hearing even though a petitioner claimed that his attorney had underestimated his sentence because the petitioner provided no independent indicia

of his claims to overcome his "sworn testimony under oath that no promises had been made to induce him to plead guilty").

In sum, rather than supplying evidence to support his claims that Carlisle had misadvised him on his sentencing exposure, Betancourt has again changed his story as to what Carlisle had told him prior to him pleading guilty. *Compare* Mem. [146] at 5; *with* Mem. [187] at 7. Betancourt has not overcome the strong presumption of verity of his sworn statements at his plea that Carlisle informed him of the statutory minimum sentence, *see* Tr. [163] at 19-20, or his own representations that he had not received any promises of a particular sentence, *id.* at 14. Instead, Betancourt's inconsistencies as to Carlisle's advice further solidifies the credibility determination made by the Court at the hearing on his Motion [145] to Withdraw Guilty Plea. Tr. [164] at 15-16, 18-19, 21, 26, 30, 35-36. Betancourt has not demonstrated that he was misadvised, and therefore has not shown that Carlisle was constitutionally deficient. His Motion [186] to Vacate should be denied on this basis.

3.    <u>Whether Betancourt was prejudiced by any incorrect advice</u>

Even if Betancourt had presented sufficient evidence to support his allegations of deficient performance, the Court would nevertheless find that his Motion [186] should be denied because he cannot show any prejudice. To satisfy this second prong of the *Strickland* analysis, Betancourt needed to prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Shepherd*, 880 F.3d at 743.

Betancourt's evidence that he would have gone to trial consists of his attempt to withdraw his plea after he learned that his Guidelines range was life imprisonment, *see* Mot. [145]; Mem. [146], and his letter to the Court prior to sentencing which expressed his dissatisfaction with Carlisle's representation, *see* Mem. [187] at 12; Tr. [164] at 18-19 (discussing the letter). While this evidence is close in time to his guilty plea, it relies solely on post-hoc assertions of how he would have pled had he known of the alleged error, which are typically insufficient to show prejudice. *See Batamula*, 823 F.3d at 240; *Lee*, 137 S. Ct. at 1967. This is especially true where, as here, these claims contradict Betancourt's sworn statements at the plea hearing. *See United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017); *United States v. McClinton*, 782 F. App'x 312, 314-15 (5th Cir. 2019).

As the Court has already discussed, at the plea hearing Betancourt was informed by the Court of the statutory minimum and maximum sentence for Count 1, which he admitted under oath he had discussed with his attorney, Tr. [163] at 19-20, and stated that he was not relying on any promises beyond those in the Plea Agreement [97] and Plea Supplement [98], which did not make any guarantees as to a particular sentence, Tr. [163] at 14. In fact, the Plea Agreement [97], signed by Betancourt, clearly stated:

> Defendant specifically acknowledges that Defendant is not relying upon anyone's calculation of a particular Guideline range for the offense to which Defendant is entering this plea, and recognizes that the Court will make the final determination of the sentence and that Defendant may be sentenced up to the maximum penalties.

Plea Agree. [97] at 2; *see also* Plea. Supp. [98] at 1-2 (filed under seal) ("It is further understood that the Court . . . may sentence Defendant to the maximum fine and imprisonment as provided by law . . . .").

The Court further admonished Betancourt regarding his possible sentence:

THE COURT: Now, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued sentencing guidelines for judges to follow to determine the sentence in a criminal case. Your sentence in this case will be determined by considering a combination of these advisory sentencing guidelines, possible authorized departures from those guidelines, and other statutory sentencing factors that have been set forth by [C]ongress at Title 18, United States Code, Section 3553. Have you and your attorney talked about how the sentencing guidelines might apply to your case?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that the Court will not be able to determine the guideline sentencing range for your case until after the probation office has prepared a presentence report and you and the government have had an opportunity to review that report and to challenge or object to the reported facts and proposed application of the sentencing guidelines recommended by the probation officer; do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: And do you understand that the sentence ultimately imposed by the Court may be different from any estimate that your attorney may have given you; do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Also, after your initial advisory sentencing guideline range has been determined, the Court has the authority, under some circumstances, to depart upward above the guideline range, or downward below the guideline range. And the Court will also consider statutory sentencing factors found at Title 18, United States Code, Section 3553 that could result in the imposition of a sentence that is either greater than or lesser than the advisory guideline sentence range; do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that the Court, in its discretion, could sentence you up to the maximum prison sentence provided by statute, which in this case is not less than 10 years, up to a maximum of life imprisonment; do you understand that?
THE DEFENDANT: Yes, sir.

Tr. [163] at 23-24. After being advised of these possibilities by the Court, Betancourt stated under oath that he understood them and proceeded to plead guilty. *Id.* at 34. Therefore, regardless of whatever belief he held about his potential advisory Guidelines, he knew that his guilty plea could result in a term of life imprisonment and still chose to plead guilty. This weighs heavily against any claim of prejudice. *See Valdez*, 973 F.3d at 403-05.

Moreover, Betancourt had little chance of success at trial and faced potentially greater risks had he not pled guilty. He was arrested following a traffic stop when a "search of the vehicle revealed a five-gallon bucket containing approximately 8.9 pounds of a crystal-like substance in the rear area hatch located next to [Betancourt]," and the substance was determined to be methamphetamine "ice." PSR [154] at 7. Betancourt does not argue that he had any defense to these charges or even claim that he believes he might have been acquitted. *See* Mot. [186]; Mem. [187]. Nor does he assert that his Guidelines were calculated incorrectly. Instead, Betancourt takes the position that, facing a Guidelines range of life imprisonment, he had nothing to lose by going to trial. Mem. [187] at 11. However, a defendant with no real defense to the charges often has a strong incentive to plead, even in the face of a harsh sentence, since it allows him "to argue that his acceptance of responsibility warrant[s] leniency." *Young v. Spinner*, 873 F.3d 282, 287 (5th Cir. 2017). This is particularly true when the only major interest of the defendant is minimizing his sentence because "[p]leading guilty usually does reduce the length of a defendant's sentence." *Id.* at 288. Betancourt has cited to no other

interest besides limiting his term of imprisonment. *See generally* Mem. [146]; Mem. [187]. Knowing that his Guidelines range was life imprisonment, there is a reasonable probability that Betancourt nevertheless would have pled guilty in hopes of obtaining some leniency from the Court[5] that might be less likely if he went to trial and were convicted on all six counts of the Indictment [37].

In addition, the record reflects that Betancourt could have obtained an additional sentence reduction by pleading guilty and cooperating with the Government, *see* Tr. [164] at 34-35; Resp. [147] at 3-4, however, after he pled guilty and as sentencing approached, the Government determined that Betancourt had made numerous fabricated statements, and it was unwilling to seek any reduction for cooperation, Resp. [147] at 3-4. While his lies may have ultimately thwarted this benefit in hindsight, this possibility of an additional reduction also supports a finding that Betancourt would have pled guilty even if he knew that his Guidelines range was life imprisonment.

Given Betancourt's statements at the plea hearing that he understood he could be sentenced to life imprisonment, his acknowledgement that he was not relying on any promises of a particular sentence in pleading guilty, and his strong likelihood of conviction had he gone to trial, the Court finds that Betancourt has not shown a reasonable probability that he would have gone to trial had he not allegedly received incorrect advice about his sentencing exposure. As a result, he

---

[5] In fact, following his plea, Betancourt requested and was granted a downward variance from his Guidelines range, and was sentenced to 330 months' imprisonment rather than life. J. [156].

cannot satisfy the second prong of *Strickland*, and his Motion [186] should also be denied on this basis.

### III. CONCLUSION

Because the Motion [186], files, and records conclusively show that Betancourt is entitled to no relief, the Court finds that Defendant's Motion [186] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255, should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Erik Ivan Betancourt Olguin's Motion [186] under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** without an evidentiary hearing.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Erik Ivan Betancourt Olguin's Motion [188] to Expand Record is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 10th day of April, 2023.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE